# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MICHAEL ANTHONY DICKENS,         )
                                 )
                Plaintiff,       )
                                 )
        v.                       )      1:15CV878
                                 )
CAROLYN W. COLVIN,               )
Acting Commissioner of Social    )
Security,                        )
                                 )
                Defendant.       )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Michael Anthony Dickens, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claims for Supplemental Security Income ("SSI"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 6 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 11, 13; <u>see also</u> Docket Entry 12 (Plaintiff's Brief); Docket Entry 14 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

## I. PROCEDURAL HISTORY

Plaintiff applied for SSI. (Tr. 284-90.)[1] Upon denial of that application initially (Tr. 181-99, 218-21) and on

---

[1] Plaintiff filed a previous application for Disability Insurance Benefits and SSI, which resulted in an ALJ decision denying his claims on February 23, 2010. (Tr. 157-75.)

reconsideration (Tr. 200-17, 224-28), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 233-35). Plaintiff, his attorney, a medical expert, and a vocational expert ("VE") attended the hearing. (Tr. 125-56.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 110-21.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 9-15, 40), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] has not engaged in substantial gainful activity since July 19, 2011, the application date.
>
> 2. [Plaintiff] has the following severe impairments: degenerative disc disease; fused thumb, and bilateral meniscus tears with surgical repairs.
>
> . . .
>
> 3. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> . . .
>
> 4. . . . [Plaintiff] has the residual functional capacity to perform light work . . . with allowance for alternating between sitting and standing at 2-hour intervals; only occasional postural activities including kneeling, crouching and crawling; and frequent but not constant use of his right upper extremity. He is also limited to simple, routine, repetitive tasks involving no contact with the general public and limited contact with co-workers and supervisors.
>
> . . .

2

5.  [Plaintiff] is unable to perform any past relevant
   work.

   . . .

   9.  Considering [Plaintiff's] age, education, work
   experience, and residual functional capacity, there are
   jobs that exist in significant numbers in the national
   economy that [he] can perform.

   . . .

   10. [Plaintiff] has not been under a disability, as
   defined in the [] Act, since July 19, 2011, the date the
   application was filed.

(Tr. 115-21 (bold font and internal parenthetical citations omitted).)

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

### A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561

(internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

4

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id.

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of

---

[2] The Act "comprises two disability benefits programs. The Disability Insurance Benefits Program provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

5

specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess

---

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658
(continued...)

whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. See id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

### B. Assignments of Error

Plaintiff contends that the Court should overturn the ALJ's finding of no disability on these grounds:

(1) the ALJ "committed error in failing to include [Plaintiff's] difficulties in concentration, persistence or pace [("CPP")] in his RFC despite finding that he suffered from moderate

---

[4] (...continued)
F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

[5] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

difficulties in maintaining concentration in step 3 of the [SEP]" (Docket Entry 12 at 10 (bold font and underlining omitted));

(2) "[t]he ALJ erred in determining that Linda Hunter, LCSW, is not an acceptable medical source and by not giving greater weight to her opinion" (id. at 11 (bold font and underlining omitted)); and

(3) the ALJ "failed to evaluate [Plaintiff's] affective and anxiety-related disorders and their effect in combination with his other severe impairments on his ability to work on a sustained basis as required by 42 U.S.C. [§] 423(d)(2)(c)" (id. at 12 (bold font and underlining omitted)).

Defendant disputes Plaintiff's assignments of error, and urges that substantial evidence supports the finding of no disability. (See Docket Entry 14 at 4-15.)

### 1. CPP

In Plaintiff's first assignment of error, he contends that the ALJ "committed error in failing to include [Plaintiff's] difficulties in [CPP] in his RFC despite finding that he suffered from moderate difficulties in maintaining concentration in step 3 of the [SEP]." (Docket Entry 12 at 10 (bold font and underlining omitted).) Plaintiff maintains that, pursuant to Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), "'an ALJ does not account for a claimant's limitations in [CPP] by restricting the hypothetical question to simple, routine tasks or unskilled work . . . [because]

8

the ability to perform simple tasks differs from the ability to stay on task[,] [and] [o]nly the latter limitation would account for a claimant's limitation in [CPP].'" (Docket Entry 12 at 10-11 (quoting Mascio, 780 F.3d at 638 (internal quotation marks omitted)).) According to Plaintiff, the ALJ's failure to include Plaintiff's difficulties in maintaining concentration in the RFC and hypothetical question to the VE "justifies a remand of the claim." (Id. at 11.) Plaintiff's argument misses the mark.

Indeed, the Fourth Circuit has held that "the ability to perform simple tasks differs from the ability to stay on task" and that "[o]nly the latter limitation would account for a claimant's limitation in [CPP]." Mascio, 780 F.3d at 638. However, in this case, the ALJ included a restriction in the hypothetical question to the VE (although not in the RFC) "reasonably related to a moderate limitation in Plaintiff's ability to stay on task," Grant v. Colvin, No. 1:15CV00515, 2016 WL 4007606, at *6 (M.D.N.C. July 26, 2016) (unpublished), recommendation adopted, slip op. (M.D.N.C. Sept. 21, 2016) (Osteen, C.J.), by restricting Plaintiff to "simple, repetitive tasks . . . where there would be no contact with the general public and limited contact with co-workers and supervisors, [and] a non-production environment" (Tr. 151 (emphasis added)). In that regard:

> [T]he weight of authority in the circuits that rendered the rulings undergirding the Fourth Circuit's holding in Mascio supports the view that the non-production restriction adopted in this case sufficiently accounts

9

for [the p]laintiff's moderate limitation in CPP. Moreover, that approach makes sense. In Mascio, the Fourth Circuit held only that, when an ALJ finds moderate limitation in CPP, the ALJ must either adopt a restriction that addresses the "staying on task" aspect of CPP-related deficits (which a restriction to simple tasks does not, at least on its face) or explain why the CPP limitation of that particular claimant did not necessitate a further restriction regarding "staying on task." Where, as here, the ALJ has included a specific restriction that facially addresses "moderate" (not "marked" or "extreme," see 20 C.F.R. § 416.920a(c)(4)) limitation in the claimant's ability to stay on task, i.e., a restriction to "non-production oriented" work, Mascio does not require further explanation by the ALJ, at least absent some evidentiary showing by the claimant (not offered here) that he or she cannot perform even non-production-type work because of his or her particular CPP deficits.

Grant, 2016 WL 4007606, at *9; see also id. at *7-9 (discussing authority addressing "non-production" restrictions). Accordingly, the ALJ explicitly considered and accounted for Plaintiff's ability to "stay on task" in the hypothetical question, which the Mascio court distinguished from the ability to perform simple tasks, see Mascio, 780 F.3d at 638.[6]

In sum, Plaintiff's first claim on review fails to entitle him to remand.

---

[6] Moreover, in determining Plaintiff's mental RFC, the ALJ gave "greatest weight" to the opinions of the state agency psychologists. (Tr. 119.) Notably, each psychologist assessed Plaintiff with moderate difficulties in CPP (see Tr. 190, 207); however, they each concluded that Plaintiff remained able "to maintain concentration and attention for an adequate period to complete short and simple tasks" (Tr. 195, 213). The ALJ's express reliance on these opinions regarding Plaintiff's ability to stay on task provides further support for his mental RFC and renders Mascio distinguishable. See Del Vecchio v. Colvin, No. 1:14CV116, 2015 WL 5023857, at *6 (W.D.N.C. Aug. 25, 2015) (unpublished) ("Here, unlike in Mascio, the ALJ discussed substantial record evidence in determining [the claimant's] mental RFC, and his explicit reliance on [the state agency consultant's] opinion adequately explains why [the claimant's] limitations in [CPP] did not translate into any additional restrictions . . . . Therefore, the Court is not left to guess at the ALJ's decision-making process.").

## 2. Therapist's Opinions

In Plaintiff's second issue on review, he alleges that the ALJ "gave inadequate weight to the medical opinion of Linda Hunter, [Plaintiff's] therapist, and failed to recognize her opinion as being from an 'other' medical source." (Docket Entry 12 at 11.) Although Plaintiff concedes that the ALJ could not have accorded Ms. Hunter's opinion controlling weight because she does not qualify as an "acceptable medical source" (id. at 12 (quoting 20 C.F.R. § 404.1513)), Plaintiff asserts that "the ALJ must consider the opinions of non-acceptable medical sources as he would any other relevant evidence" (id. (citing 20 C.F.R. § 404.1527(b))). According to Plaintiff, "[a]s a licensed clinical social worker who worked as part of a team of providers including medical doctors . . ., Ms. Hunter fits the criteria of 'other' medical sources, who are appropriate sources of evidence regarding the severity of a claimant's impairment, and the effect of the impairment on a claimant's ability to work." (Id. (citing 20 C.F.R. § 404.1513(a)).) Plaintiff's contentions fall short.

As Plaintiff conceded (see Docket Entry 12 at 12) and the ALJ correctly recognized (see Tr. 120), Ms. Hunter does not constitute an "acceptable medical source" under the regulations, 20 C.F.R. § 416.913(a) (defined to include, inter alia, "[l]icensed physicians" and "[l]icensed or certified psychologists"), but rather an "[o]ther source[]," 20 C.F.R. § 416.913(d)(1). Social

11

Security Ruling 06-03p, <u>Titles II and XVI: Considering Opinions and Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies</u>, 2006 WL 2329939 (Aug. 9, 2006) ("SSR 06-03p") addresses the significance of the distinction between "acceptable medical sources" and "other sources" as follows:

> The distinction between "acceptable medical sources" and other health care providers who are not "acceptable medical sources" is necessary for three reasons. First, we need evidence from "acceptable medical sources" to establish the existence of a medically determinable impairment. <u>See</u> 20 [C.F.R. §§] 404.1513(a) and 416.913(a). Second, only "acceptable medical sources" can give us medical opinions. <u>See</u> 20 [C.F.R. §§] 404.1527(a)(2) and 416.927(a)(2). Third, <u>only "acceptable medical sources" can be considered treating sources, as defined in 20 [C.F.R. §§] 404.1502 and 416.902, whose medical opinions may be entitled to controlling weight</u>. <u>See</u> 20 [C.F.R. §§] 404.1527(d) and 416.927(d).

SSR 06-03p, 2006 WL 2329939, at *2 (emphasis added). In light of the reduced deference owed to the opinions of "other sources," the ALJ did not err by failing to give Ms. Hunter's opinions controlling weight.[7]

---

[7] Notably, Plaintiff does not argue (<u>see</u> Docket Entry 12 at 11-12) that Ms. Hunter worked so closely under a psychiatrist's or psychologist's supervision that she offered her opinions while acting as the agent of an acceptable medical source. <u>See generally</u> <u>Taylor v. Commissioner of Soc. Sec. Admin.</u>, 659 F.3d 1228, 1234 (9th Cir. 2011) (holding that nurse practitioner could qualify as "acceptable medical source" where she worked under physician's close supervision such that she acted as physician's agent); <u>Padrta v. Colvin</u>, No. 3:12-CV-01521-KI, 2014 WL 1236185, at *6 (D. Or. Mar. 25, 2014) (unpublished) (holding where "[t]here is no evidence that the nurse practitioner work[ed] closely with and [wa]s supervised by an acceptable medical source[,] . . . the ALJ is only required to give a germane reason to reject [the nurse
(continued...)

12

Nevertheless, the ALJ must still evaluate the opinions from "other sources" like Ms. Hunter under the factors set forth in 20 C.F.R. § 416.927(c). See Social Security Ruling 96-5p, Policy Interpretation Ruling Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner, 1996 WL 374183, at *5 (July 2, 1996) ("SSR 96-5p") (noting that ALJs "must weigh medical source statements . . . [and] provid[e] appropriate explanations for accepting or rejecting such opinions"). Here, Ms. Hunter supplied a letter dated June 14, 2013, in which she reported that she had treated Plaintiff since November 15, 2007, and opined that Plaintiff had "serious[] limit[ations] in [his] ability to concentrate, ha[d] difficulty with follow-through and reliability and [wa]s in danger of decompensation without medication to help him stabilize and cope." (Tr. 725.) In addition, Ms. Hunter reported that, "[u]ntil [Plaintiff's] medical and psychological conditions can stabilize, he will be unable to manage any kind of work." (Id.)

The ALJ's evaluation of Ms. Hunter's foregoing opinions complied with the regulatory requirements. The ALJ accorded "little weight" to Ms. Hunter's opinions for multiple reasons. (Tr. 120.) The ALJ found that Ms. Hunter's own treatment records

---

[7] (...continued)
practitioner's] opinion"); see also Martin v. Colvin, No. 1:14CV516, 2015 WL 5944455, at *10 (M.D.N.C. Oct. 13, 2015) (unpublished) (Auld, M.J.) (instructing ALJ to reassess conclusion that counselor did not constitute acceptable medical source where supervising psychologist signed off on counselor's opinions), recommendation adopted, slip op. (M.D.N.C. Nov. 3, 2015) (Biggs, J.).

did not support her opinions (see Tr. 119-20), and that Ms. Hunter's opinions also lacked consistency "with other mental status reports indicating [Plaintiff's] cognition and concentration were intact" (Tr. 120). Further, the ALJ correctly observed that Ms. Hunter's opinion that Plaintiff could not "manage any kind of work" qualified as "a matter reserved to the Commissioner." (Id. (citing SSR 96-5p); see also 20 C.F.R. § 416.927(d).) Significantly, Plaintiff makes no argument specifically attacking these reasons for discounting Ms. Hunter's opinions and, beyond arguing that she constitutes an "other source," does not supply any basis for affording her opinions more than "little weight." (See Docket Entry 12 at 11-12.)

Under such circumstances, the ALJ did not err in evaluating the opinion of Ms. Hunter.

### 3. Combined Effect of Impairments

In Plaintiff's third and final issue on review, he maintains that the ALJ failed to evaluate the combined effect of his mental impairments and "his other severe impairments on his ability to work on a sustained basis as required by 42 U.S.C. [§] 423(d)(2)(c)." (Docket Entry 12 at 12 (bold font and underlining omitted).) According to Plaintiff, "an ALJ is required in his decision to 'adequately explain his or her evaluation of the combined effects of [a claimant's] impairments and not fragmentize them,'" and that "'disability may result from a number of

14

impairments which, taken separately, might not be disabling, but whose total effect, taken together, is to render [a] claimant unable to engage in substantial gainful activity.'" (Id. at 13 (quoting Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989)).) Plaintiff contends that the ALJ here "failed to analyze and discuss the overall impact of [Plaintiff's] affective and anxiety-related disorders and their interaction with his other severe impairments including chronic back and bilateral knee pain." (Id.) Plaintiff's third challenge lacks merit.

The weight of authority dispels the argument that Walker mandates the level of analysis and discussion that Plaintiff would have the Court place upon ALJs, as recognized in the following well-reasoned decision from a neighboring court:

> When dealing with a claimant with multiple impairments, the Commissioner must consider the combined effect of a claimant's impairments and not fragmentize them." Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989) (citing Reichenbach v. Heckler, 808 F.2d 309 (4th Cir. 1985)[)]. This requires the ALJ to "adequately explain his or her evaluation of the combined effects of the impairments." Id. The ALJ's duty to consider the combined effects of a claimant's multiple impairments is not limited to one particular aspect of review, but is to continue "throughout the disability determination process." 20 C.F.R. § 404.1523.
>
> Following the Walker decision, the Fourth Circuit has provided little elaboration on what constitutes an "adequate" combined effect analysis. However, other circuits have shown great deference to the Commissioner in addressing the same issue.[FN2] In an unpublished opinion decided after Walker, the Fourth Circuit seems to fall in line with these other circuits. See Green v. Chater, 64 F.3d 657, 1995 WL 478032 (4th Cir. 1995). In the opinion, the court found that the district court

15

"correctly determined that the ALJ had adequately explained his evaluation of the combined effect of [the claimant's] impairments." Id. at *3. In reaching this conclusion, the court focused on the ALJ's conclusory statement that he had considered all of the claimant's impairments, both singularly and in combination and then noted evidence that was consistent with this conclusion. Id. This evidence consisted of (1) the ALJ's finding that the claimant's combination of impairments precluded heavy lifting; (2) the ALJ's listing and consideration of each of the alleged impairments; and (3) the ALJ's finding that many of the claimant's symptoms were treatable. Id. Thus, this limited threshold for an "adequate" combined effect analysis suggests that "Walker was not meant to be used as a trap for the Commissioner." Brown v. Astrue, 0:10-cv-01584-RBH, 2012 WL 3716792, at *6 (D.S.C. Aug. 28, 2012). "Accordingly, the adequacy requirement of Walker is met if it is clear from the decision as a whole that the ALJ considered the combined effect of a claimant's impairments." Id.

> FN2. See Gooch v. Secretary, Health & Human Servs., 833 F.2d 589, 592 (6th Cir. 1987) ("[T]he fact that each element of the record was discussed individually hardly suggests that the totality of the record was not considered, particularly in view of the fact that the ALJ specifically referred to 'a combination of impairments' in deciding that [the plaintiff] did not meet the 'listings.'"); Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992) ("After separately discussing [the plaintiff's] physical impairments, affective disorder, and complaints of pain, as well as her daily level of activities, the ALJ found that her impairments do not prevent [her] from performing her past relevant work. To require a more elaborate articulation of the ALJ's thought processes would not be reasonable." (internal quotation marks omitted)); Eggleston v. Bowen, 851 F.2d 1244, 1247 (10th cir. 1988) ("The ALJ's opinion addresses [the plaintiff's] various impairments, and we find nothing to suggest they were not properly considered.").

Williams v. Colvin, Civ. No. 6:11-2344-GRA-KFM, 2013 WL 877128, at *2 (D.S.C. Mar. 8, 2013) (unpublished); see also Paris v. Colvin,

No. 7:12-CV-00596, 2014 WL 534057, at *12 (W.D. Va. Feb. 10, 2014) (unpublished) (holding that "[i]t is apparent from the RFC itself that the ALJ accounted for the cumulative impact of [the plaintiff's] impairments as supported in the record, providing restrictions that are both mental and physical"); Wilson-Coleman v. Colvin, NO. 1:11CV726, 2013 WL 6018780, at *3 (M.D.N.C. Nov. 12, 2013) (Webster, M.J.) (unpublished) (concluding that "sufficient consideration of the combined effects of a claimant's impairments is shown when each is separately discussed in the ALJ's decision, including discussion of a claimant's complaints of pain and level of daily activities" (quoting Baldwin v. Barnhart, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005), aff'd, 179 F. App'x 167 (4th Cir. 2006)) (internal brackets omitted)), recommendation adopted, slip op. (M.D.N.C. Dec. 6, 2013) (Schroeder, J.); Jones v. Astrue, No. 5:07-CV-452-FL, 2009 WL 455414, at *15 (E.D.N.C. Feb. 23, 2009) (noting that ALJ's RFC assessment and summarization of medical records as to each impairment indicate ALJ "considered all of [the c]laimant's mental and physical limitations together").

Here, the ALJ provided a thorough discussion of the medical evidence and discussed each of Plaintiff's alleged impairments, both severe and non-severe. (Tr. 116-20.) At step three, the ALJ expressly found that Plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." (Tr. 115 (emphasis

17

added).) In conjunction with the RFC determination, the ALJ stated that he had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (Tr. 116.) Moreover, the ALJ's RFC, limiting Plaintiff to light work with a sit/stand option at two-hour intervals, and involving occasional postural activities, frequent use of his right upper extremity, simple, routine, and repetitive tasks, no contact with the general public, and limited contact with co-workers and supervisors (Tr. 116), clearly accounted for Plaintiff's physical and mental impairments. Thus, the ALJ's decision, as a whole, adequately demonstrates that he considered Plaintiff's impairments in combination in accordance with Walker.

As a final note, even if the Court should find that the ALJ did not adequately explain his analysis of the cumulative effect of Plaintiff's impairments, the Court need not remand this case, because Plaintiff has not made any attempt to show how a more complete analysis would have resulted in a more restrictive RFC or a different outcome in the case (see Docket Entry 12 at 12-13). See Anderson v. Colvin, No. 1:10CV671, 2013 WL 3730121, at *7 (M.D.N.C. Jul. 12, 2013) (Webster, M.J.) (unpublished) ("Plaintiff has failed to establish how further scrutiny of the combination of her impairments results in any greater functional limitations than those already set forth in her RFC."), recommendation adopted in

18

relevant part, 2014 WL 1224726 (M.D.N.C. Mar. 25, 2014) (Osteen, C.J.) (unpublished).

In short, Plaintiff's third assignment of error fails as a matter of law.

### III. CONCLUSION

Plaintiff has not established an error warranting reversal or remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 11)[8] be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 13) be granted, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

January 23, 2017

---

[8] Although the title of Plaintiff's motion reads "MOTION FOR SUMMARY JUDGMENT," in the body of the motion, Plaintiff indicates that he "moves this Court for an Order [g]ranting Plaintiff's Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure." (See Docket Entry 11 at 1.)